**Myer SHARK, Plaintiff and Appellant,**

v.

**CITY OF FARGO, a Municipal Corporation, Defendant and Appellee.**

**Civ. No. 890041.**

Supreme Court of North Dakota.

June 27, 1989.

Myer Shark Law Office, Fargo, for plaintiff and appellant, argued by Myer Shark, pro se. Appearance by Kathleen Ziegelmann of Lanier, Knox and Olson, Fargo.

Solberg, Stewart, Boulger & Miller, Fargo, for defendant and appellee, argued by Garylle B. Stewart, Fargo.

GIERKE, Justice.

This is an appeal by the plaintiff, Myer Shark, from a district court judgment granting summary judgment in favor of the defendant, City of Fargo. We affirm.

In October of 1980, Shark was retained by the City of Fargo in connection with litigation before the Public Service Commission of North Dakota concerning natural gas rates being charged by Northern States Power Company in eastern North Dakota. The Fargo City Commission appropriated $5,000.00 for this purpose. Shark on behalf of the City of Fargo prevailed in the gas rate litigation before the Public Service Commission.

Northern States Power Company appealed to the district court. Shark appeared before the Fargo City Commission and requested an additional $10,000.00 be appropriated to fund the appeal of the gas rate case to the district court. The request was granted and the original retainer was expanded to $15,000.00 to resist such appeal. Following the district court decision in favor of the City of Fargo, an appeal was taken by Northern States Power Company to this Court.

On July 20, 1981, Shark wrote to the Fargo City Commission requesting an additional $10,000.00 appropriation for legal fees associated with the appeal to the Supreme Court. Shark's request for an additional appropriation was deferred until the July 27, 1981 meeting of the Fargo City Commission at which time Shark's request for the additional appropriation of $10,-000.00 was discussed. The Fargo City Commission decided, due to budgetary constraints, to make an additional appropriation of only $2,500.00 to Shark to fund the appeal to the Supreme Court. The Fargo City Commission discussed that this would be a final allocation to Shark for the gas rate litigation. Thus, the Fargo City Commission provided for a maximum appropriation of $17,500.00 for payment of Shark's fees and expenses associated with the gas rate litigation. The City of Fargo has paid to date $16,370.00 to Shark for legal services and expenses incurred with regard to the gas rate case.

Shark nevertheless continued to work on the gas rate case even after the appropriated money was depleted. Shark made no further requests for additional appropriations until February 23, 1982, at which time Shark submitted his final billing to the Fargo City Commission for fees and expenses which totaled $10,026.42. Shark's bill was received and filed by the Fargo City Commission at its March 8, 1982 meeting. However, the Fargo City Commission did not order that the bill be paid.

Shark filed suit against the City of Fargo to recover legal fees and expenses in the sum of $10,026.42 incurred in connection with the gas rate litigation. The City of Fargo answered and alleged that Shark had a specific understanding as to the limitation on the portion of his fees which would be paid by the City of Fargo, that being the amount appropriated by the Fargo City Commission. The City of Fargo made, pursuant to Rule 68 of the North Dakota Rules of Civil Procedure, an offer of judgment in the amount of $1,130.00 which was the difference between the $17,500.00 actually appropriated and the $16,370.00 previously paid to Shark.[1] Shark made a motion for summary judgment which was followed by the City of Fargo's motion for summary judgment. The trial court ordered that summary judgment be granted in favor of the City of Fargo. Shark filed a motion with the trial court asking it to reconsider and revise its order granting the City of Fargo's motion for summary judgment. The trial court denied Shark's motion for reconsideration and revision. On November 2, 1988, the trial court entered summary judgment in favor of the City of Fargo and ordered that the City of Fargo pay Shark $1,130.00 for services rendered. This appeal followed.

Shark raises two issues on appeal. Shark contends that the trial court erred in granting summary judgment because the City of Fargo did not plead the "defense of automatic termination of the retainer"[2] and therefore should not be able to use such a defense. Shark also contends that a genuine issue of material fact exists which precludes the granting of summary judgment.

Under Rule 56 of the North Dakota Rules of Civil Procedure, summary judgment should be granted only if, after viewing the evidence in a light most favorable to the opposing party, it appears that there are no genuine issues as to any material fact and that the party seeking summary judgment is entitled to it as a matter of law. *Larson v. Baer*, 418 N.W.2d 282 (N.D.1988); *Northwestern Equipment, Inc. v. Badinger*, 403 N.W.2d 8 (N.D.1987); *Greenwood v. American Family Ins. Co.*, 398 N.W.2d 108 (N.D.1986).

Initially, Shark asserts that the defense of automatic termination of the retainer was an affirmative defense which the City of Fargo did not specifically set forth in its pleadings as required by Rule 8 of the North Dakota Rules of Civil Procedure.

Rule 8(c) of the North Dakota Rules of Civil Procedure provides as follows:

"RULE 8—GENERAL RULES
OF PLEADING

\*      \*      \*      \*      \*      \*

1. Rule 68, N.D.R.Civ.P., provides in relevant part as follows:
   "RULE 68—OFFER OF SETTLEMENT OR CONFESSION OF JUDGMENT—TENDER
   "(a) Offer of settlement. At any time more than ten days before the trial begins, any party may serve upon an adverse party an offer, denominated as an offer under this rule, to settle a claim for the money or property or the effect specified in the offer, with costs then accrued and to enter into a stipulation dismissing the claim or to allow judgment to be entered accordingly. If within ten days after the service of the offer, the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment upon order of the court. An offer not accepted is deemed withdrawn and evidence of the offer is not admissible except in a proceeding to determine costs. If the judgment is not more favorable than the

offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. If liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, any party may make an offer of settlement under this rule, which has the same effect as an offer made before trial if it is served within a reasonable time not less than ten days before the commencement of hearings to determine the amount or extent of liability."

2. As we understand it, the meaning of the clause "the defense of automatic termination of the retainer" referred to by Shark and the City of Fargo is that the work and services were to terminate when the appropriated amount of money for the retainer ran out or was used up.

"(c) Affirmative defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge and bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of· frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

Thus, an affirmative defense must be affirmatively set forth by the defendant in the answer. Rule 8(c), N.D.R.Civ.P. An affirmative defense which is not set forth in the pleadings is waived.[3] *Northwestern Federal Sav. & Loan v. Biby*, 418 N.W.2d 786 (N.D.1988); *Rugby Milling Co. v. Logosz*, 261 N.W.2d 662 (N.D.1977).

The City of Fargo in its answer to the complaint admitted that Shark was re-

tained to perform legal services but "denied that said retainer was never terminated." Additionally, the City of Fargo asserted as an affirmative defense that Shark undertook the natural gas rate litigation with the specific understanding as to the limitation on that portion of his fees which would be paid by the City of Fargo.[4]

We believe that the City of Fargo in its answer sufficiently set forth in short and plain terms the defense of automatic termination of the retainer. Therefore, even if we assume that the automatic termination of a retainer is an affirmative defense, we believe that the City of Fargo affirmatively set forth such a defense in its answer.

■ Shark also asserts that the trial court erred in granting summary judgment because there is a genuine issue of material fact regarding the finality of the last appropriation.

We note that at the July 27, 1981 meeting of the Fargo City Commissioners, in which a $2,500.00 appropriation was made to Shark, it was stated that "this will be the final allocation" to Shark for the rolled-in gas rate litigation.[5] We further note

---

**3.** We note that the rules governing civil procedure shall be construed to secure the just, speedy, and inexpensive determination of every action. Rule 1, N.D.R.Civ.P. We also note that all pleadings are to be so construed as to do substantial justice. Rule 8(f), N.D.R.Civ.P.

**4.** The City of Fargo's answer alleged in part as follows:

"II.

"Admits that Plaintiff was retained as alleged in paragraph III. of Plaintiff's Complaint; but denies that said retainer was never terminated.

\* \* \* \* \* \*

"VII.

"As and for its third affirmative defense, Defendant alleges that Plaintiff undertook the pursuit of the natural gas rate matters with the specific understanding as to the limitation on that portion of his fees which would be paid by Defendant."

**5.** The Fargo City Commissioners discussed at the July 27, 1981 regular meeting Shark's request for an additional appropriation to fund the rolled-in gas rate litigation case. The relevant portion of the minutes of that meeting are as follows:

*"$2,500.00 Allocated for Myer Shark for Rolled–In Gas Rates:*

"Commissioner Cichy stated at the July 20, 1981 Regular Meeting of the Board a request was received from Myer Shark, Attorney, that the City appropriate an additional $10,000 to the fund out of which his fees and the expenses of litigation are paid relative to the gas and utility rate hearings because of two principal forthcoming matters in this regard. He said the Board deferred Mr. Shark's request for additional funds for one week and directed the City Auditor to report as to whether or not additional funds will be available to retain Mr. Shark.

"Commissioner Cichy stated it is the feeling of the City Auditor and himself that the City has carried this matter this far and should continue but should restrict Mr. Shark's activities to the rolled-in gas rates.

"Commissioner Cichy moved that a sum of money, not to exceed $2,500.00 be allocated from Revenue Sharing for Myer Shark's legal fees in connection with the rolled-in gas rates issue, and that no further activities be funded *that may be only somewhat attached to the* case.

"Second by Sahr.

that on February 23, 1982, Shark submitted a letter to the Fargo City Commissioners which stated that even after the appropriated money ran out he had continued to work on the rolled-in gas rate case. Shark also stated in the letter that "I acknowledge that at the time I did most of the work covered by this billing, I knew that you had provided in a resolution that the maximum appropriation for this litigation would be $17,050 [sic]." [6]

Even after viewing the evidence in the light most favorable to Shark, we do not believe that a genuine issue of material fact exists regarding the finality of the last appropriation to Shark for the rolled-in gas rate litigation.

For the reasons stated in this opinion, we conclude that the district court properly granted summary judgment in favor of the City of Fargo. Therefore, the district court judgment is affirmed.

VANDE WALLE, Acting C.J., MESCHKE and LEVINE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of ERICKSTAD, C.J., disqualified.

---

"Commissioner Pedersen questioned if this would be a final allocation for Mr. Shark.

"Commissioner Cichy stated it is his feeling that this will be the final allocation."

6. Shark's February 23, 1982 letter to the Fargo City Commissioners regarding the rolled-in gas rate litigation read as follows:

"Gentlemen:

"I herewith enclose and submit my final billings for fees and expenses in connection with the above litigation. I submitted my final report in my letter of February 18, 1982 and at your meeting February 22, 1982.

"I acknowledge that at the time I did most of the work covered by this billing, I knew that you had provided in a resolution that the maximum appropriation for this litigation would be $17,050 [sic]. Since you have heretofore paid $16,370, a balance of only $680 [sic] remains in this appropriation.

"As I told you during the progress of this work, I went ahead and did what I felt must be done to make the most of this opportunity to obtain justice in gas rates for the citizens of Fargo. I could not allow the limit on the appropriation curtail work which had to be done. Had I not gone ahead with this, I could not have conscientously [sic] said that we had done all possible in this effort.

"I am presenting the bill notwithstanding the excess over the appropriation so that you would know and the record would show the actual work done on this matter. I ask that you make such additional appropriation as you think is just and equitable under the circumstances.

"Thank you for your attention."